**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUSTIN POPOWICZ,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**METROPLEX TRADING COMPANY LLC,**<br>***doing business as GRABAGUN***<br><br>**Defendant.** | : | **CIVIL ACTION**<br>**No. 26-3564** |

**McHUGH, J.** **October 13, 2026**

**MEMORANDUM**

This putative class action, like many recent cases, addresses the issue of internet privacy and whether online merchants violate Pennsylvania state privacy laws while collecting data from consumers. Plaintiff, Justin Popowicz, individually and on behalf of all others similarly situated, alleges that Defendant Metroplex—which does business as GrabAGun—violated two Pennsylvania privacy statutes when it collected data related to a firearm purchase. GrabAGun moves to dismiss on jurisdictional grounds and for failure to state a claim. Alternatively, it requests transfer to Texas based on a forum selection clause in the pre-sale terms and conditions. Because I conclude that this clause is valid and enforceable, I will grant Defendant's motion to transfer to the Northern District of Texas.[1]

---

[1] District courts "have discretion to address convenience-based venue issues in the first instance and … should suspend concerns about other threshold issues while doing so." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018) (internal quotation marks omitted); *see also United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964) (holding that transfer under § 1404(a) is permitted when courts do not have personal jurisdiction over defendants). In other words, "[a] court may … first analyze the question of venue when the resolution of the venue issue resolves the case before the Court." *Cumberland Truck Equipment Co. v. Detroit Diesel Corp.*, 401 F.Supp.2d 415, 419 (E.D. Pa. 2005) (internal quotation

## I. Facts as pleaded

Plaintiff, a Pennsylvania resident, purchased a firearm from Defendant via its website in June of 2024. Compl. ¶ 6, ECF 2. Defendant is a national purveyor of firearms and firearm accessories, headquartered in Texas. *Id.* ¶ 8; Def. Mot. Dismiss, Ex. A, ECF 15. The website, www.grabagun.com, hosts software from Google, which intercepts data from the site's visitors, processes that data, stores it, and then uses it to generate reports on user activity. Compl. ¶¶ 28–29, ECF 2. It also collects personally identifiable information, including a hashed version of the user's email address. *Id.* ¶ 43. It then utilizes this information for targeted advertising. *Id.* ¶ 44.

Defendant's website also hosts code for a customer engagement platform called Listrak, which allows its hosts to build customer profiles. *Id.* ¶¶ 46–47. Listrak creates unique session IDs for each visit to the website and matches it to existing profiles. *Id.* ¶ 49. It intercepts both specific information on the items being purchased as well as personally identifiable information, even when the feature is disabled. *Id.* ¶¶ 49–50; 53.

Plaintiff alleges that his data was intercepted without consent in violation of both the Pennsylvania Wiretapping Act, 18 Pa.C.S. § 5701, *et seq.*, and the Uniform Firearms Act, 18 Pa.C.S. § 6111(i). Compl. ¶¶ 72–82; 83–89, ECF 2. Defendant filed a motion to dismiss or transfer, invoking a forum selection clause within the terms and conditions Plaintiff signed to effectuate his purchase. Mot. to Dismiss 21, ECF 15-4. In support, Defendant included a copy of the website terms as of June 29, 2026, just prior to filing, as well as a copy as they appeared on the date of Plaintiff's purchase. *Id.* Ex. A; Ex. B. Plaintiff responded to the motion by contesting the

---

marks omitted). Here, resolving the venue issue "resolves the case before the court," and therefore a decision based on venue without a jurisdictional analysis is proper.

agreement's validity, and included a screenshot of text, with a sworn declaration by Plaintiff's counsel—but not Plaintiff himself—stating only that the screenshot "is a true and correct copy of the checkout page as the image appears on Defendant's website." Pl. Response to Mot. to Dismiss, Ex. A, ECF 17. This image does not include the forum selection clause language and does not show a link to additional terms. *Id.* Defendant in turn responded with its own screenshot, showing the entire checkout screen, including a blue, bold, and underlined hyperlink to "Read More" which contains the clause. Def. Reply, Ex. A-1, ECF 18. The link is directly underneath the text that Plaintiff cites and adjacent to the box that users must click to continue. *Id.* This screenshot is accompanied by a second sworn declaration from Mr. Hinton, authenticating it and attesting that it has looked the same since 2018, prior to Plaintiff's purchase. *Id.*, Hinton Decl. Defendant also included an authenticated screenshot of the error page that would display if a user attempted to complete a purchase without clicking the box next to these terms and the hyperlink. *Id.* Ex. A-2.

**II. Standard of Review**

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district when convenient.[2] Because "the plaintiff's choice of venue should not be lightly disturbed," the burden of establishing the need for the transfer rests on the movant, who typically must demonstrate that both private and public interests warrant it. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). But when a valid forum selection clause applies to the action, private interests are waived and the party resisting transfer "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine Constr. Co. v. U.S. Dist. Court*,

[2] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

571 U.S. 49, 67 (2013). Therefore, "'[i]n all but the most unusual cases,' the parties will be held to their bargained-for choice of forum." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (quoting *Atlantic Marine*, 571 U.S. at 66).

The movant may support its § 1404(a) motion with "affidavits, depositions, stipulations, or other documents containing facts." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). District courts are not limited to the pleadings when deciding a § 1404(a) motion and may consider affidavits and other evidence to resolve factual disputes. *Roller v. Red Payments L.L.C.*, No. 18-1834, 2019 WL 3802031, at *4 (E.D. Pa. Aug. 12, 2019) (citing in part *Atlantic Marine*, 571 U.S. at 61 n.4); *see also Breach v. Loadsmart, Inc.*, No. 23-1493, 2024 WL 343178, at *3 n. 8 (E.D. Pa. Jan. 30, 2024) (noting that the transfer standard allows for consideration of affidavits beyond the pleadings).

## III. Discussion

### A. Whether Plaintiff agreed to the Terms and Conditions

Defendant's motion for transfer relies solely on language within the terms and conditions which it contends applied to the transaction, which provide: "By checking the Terms & Conditions box, to accept, I agree … the jurisdiction of any proceedings will take place in Dallas County." Mot. to Dismiss, ECF 15, Ex. A. As a preliminary issue, Plaintiff contends that he is not bound by the terms and conditions containing the forum selection clause because he did not have sufficient notice of them prior to completing his purchase. The parties present conflicting evidence, but Defendant's is more convincing, as discussed below.

1. *Plaintiff failed to show that he did not click to confirm his assent to the Terms and Conditions*

Plaintiff first contends that the forum selection clause is contained in an unenforceable clickwrap contract. In the response to the motion to dismiss, Plaintiff's attorney included a screen shot purporting to reproduce the "screen Plaintiff saw before completing his purchase." Resp. to Mot. to Dismiss 11, ECF 17. The screenshot does not display a hyperlink to the terms of service and shows text next to a clickable button that does not include the contested clause. Nothing else is shown, including a URL, a shopping cart, fields for entering shipping and payment information, or other hallmarks of a checkout page. Because of this, Plaintiff argues that the relevant clause was not adequately conspicuous, and therefore not binding.

Plaintiff's counsel notably excludes from their sworn declaration any statement that Plaintiff *himself* saw the screen as presented. That conclusion is stated solely in the motion, whereas the sworn declaration attests only that the image is "a true and correct copy of the checkout page as it appears on Defendant's website." Pl. Resp. to Mot. to Dismiss, Leslie Decl., ECF 17. In opposition, Defendant supports its response with exhibits and sworn statements based on firsthand knowledge about the website's design at the time Plaintiff made his purchase, as well as statements that all purchasers must accept the terms prior to purchase. Def. Reply, Second Hinton Decl., ECF 18. This is buttressed by the prior sworn declaration that Plaintiff did in fact accept the terms, twice. Mot. to Dismiss Ex. A, ECF 15.

Unsworn conclusions and allegations by counsel have little evidentiary value, and cannot form the basis for transfer decisions. *Bombin v. Sw. Airlines Co.*, 529 F.Supp.3d 411, 417 (E.D. Pa. 2021). Because Plaintiff has not provided any evidence beyond his motion about what he personally observed on the date in question, I afford the declaration from Plaintiff's counsel little

weight. In contrast, Defendant has provided ample evidence establishing the layout of the page at the time Plaintiff completed his purchase, including sworn declarations confirming its authenticity at the time Plaintiff made his purchase. I will proceed with my analysis of the enforceability of the agreement based on the conclusion that Defendant has accurately described what Plaintiff would have encountered on its website when making his purchase.

*2. The clickwrap agreement is valid*

Having determined that Plaintiff made his purchase in the manner described by Defendant, I must now determine whether that action created a valid agreement. Clickwrap agreements "require[] that a user consent to any terms or conditions by clicking on a dialog box." *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 236 (E.D. Pa. 2007). They are generally enforceable if they satisfy traditional demands of contract law. *See Swartz v. ESPN Inc.*, No. 22-1523, 2026 WL 1507403, at *6 (M.D. Pa. May 29, 2026). A "true and actual meeting of the minds" is not necessary to form a contract, so long as "the intent a reasonable person would apprehend in considering the parties' behavior" indicates an intention to be bound. *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 582 (3d Cir. 2009) (quoting *Ingrassia Constr. Co., Inc., v. Walsh*, 486 A.2d 478, 482 (Pa. Super. Ct. 1984)). Nor is it necessary for the user to have actually read the terms and conditions. *Swartz*, 2026 WL 1507403, at *6 (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016)).

For clickwrap agreements, "the occurrence of mutual assent turns on whether the consumer had reasonable notice" of the terms. *Dobbs v. Health IQ Ins. Servs., Inc.*, No. 21-5276, 2022 WL 2974713, at *3 (E.D. Pa. July 27, 2022) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014)). "A user has notice where the terms of service are conspicuous and presented in a way that a 'reasonably prudent internet user' would notice them." *Swartz*, 2026 WL 1507403,

at *7 (citing *Checchia v. SoLo Funds, Inc.*, 771 F.Supp.3d 594, 611 (E.D. Pa. 2025)). The relevant terms can be contained in a hyperlink, but best practices include underlining or capitalizing the linked text and highlighting it in a contrasting font color. *Wiggins v. Lab'y Corp. of Am. Holdings*, No. 24-0648, 2024 WL 4476646, at *9 (E.D. Pa. Oct. 11, 2024). Hyperlinks are traditionally blue, but other bold, distinct colors are permissible so long as they clearly indicate that the user can click the text. *Checchia*, 771 F.Supp.3d at 609. The link should be conspicuously placed as well, such that its placement logically indicates that it is applicable to the statement that the user is agreeing to. *Id.* at 610–611. Finally, the language must inform the user that the action they are taking is legally significant and binds them to the terms. *Swartz*, 2026 WL 1507403, at *7 ("A webpage [can notify users of the legal significance of their action] by including language such as 'By clicking the Continue >> button, you agree to the Terms & Condition.'") (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022)) (alteration in original).

Here, the sworn declaration from Defendant establishes that the hyperlink was bold, underlined, and blue, such that a reasonably prudent internet user would know that it was indeed a hyperlink. It was directly below the excerpted text and the button that Plaintiff clicked. The language within the box—"I agree to all Terms and Conditions"—is active and demonstrates that clicking the box adjacent to it creates assent to those terms. And the linked-to agreement includes the phrase, in bold: "By checking the Terms & Conditions box, to accept, I agree … that any disputes will be governed by the laws of the State of Texas and the jurisdiction of any proceedings will take place in Dallas County." Mot. to Dism. Ex. A, ECF 15-2. The terms were conspicuous and placed Plaintiff on notice of the agreement. Therefore, the clickwrap agreement is valid and binding.

**B. Whether the Forum Selection Clause Itself is Valid and Enforceable**

When a contract contains a forum selection clause, the § 1404(a) analysis is twofold. First, the court must determine whether the clause is valid and enforceable. *Mathias v. Caterpillar, Inc.*, 203 F.Supp.3d 570, 575 (E.D. Pa. 2016). Forum selection clauses are "prima facie valid," and should be enforced unless doing so would be unreasonable. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The parties agree that to prove a clause is unreasonable, "[t]he objecting party must show that (1) the forum selection clause is the result of fraud or overreaching, (2) its enforcement would violate a strong public policy of the forum, or (3) its enforcement would result in litigation so seriously inconvenient and unreasonable that it would deprive a litigant of his or her day in court." *Feldman*, 513 F.Supp.2d at 246.

Of these factors, Plaintiff only argues the second, pointing out that the action is brought under two Pennsylvania statutes, which Pennsylvania judges apply regularly, and which Pennsylvania has an interest in enforcing. But having already found that Plaintiff agreed to the contract's terms, it necessarily follows that he agreed to the choice of law provision in the same agreement, with the result that Texas law applies. And "it would be consistent with the public policy of this forum to enforce the forum selection clause in order to give force to the parties' agreement." *Feldman*, 513 F.Supp.2d at 247. It may be that the policy goals of Pennsylvania are frustrated when its laws do not apply to a dispute involving one of its citizens, but I cannot say that enforcing this contractual provision violates a strong public policy of the Commonwealth.

Plaintiff has not shown that the clause is unreasonable, and therefore the clause is valid.

**C. Whether Extraordinary Circumstances Disfavor Transfer**

The second step under § 1404(a) is for Courts to evaluate whether public interests alone justify overriding the clause. *Atlantic Marine*, 571 U.S. at 64. These interests include: the

enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879–880. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atlantic Marine*, 571 U.S. at 62. No such circumstances are present here.

Plaintiff focuses on the local interest in resolving local disputes, arguing that Pennsylvania specifically sought to protect confidential information related to firearms purchases under 18 Pa. C.S. § 6111(i). But the local interest factor is at best neutral. When the parties reside in separate states, both fora have interests in adjudicated cases involving their residents. *See Kilduff v. Jayco, Inc.*, No. 23-470, 2023 WL 3361187, at *5 (E.D. Pa. May 10, 2023). It is difficult to describe a dispute with two parties in different states as "local."

No other factors weigh against transfer sufficiently to deem this case one of the exceptionally rare ones contemplated by *Atlantic Marine*. The forum selection clause must therefore be honored, and this matter will be transferred to the Northern District of Texas, as agreed upon by the parties.

**IV. Conclusion**

For the reasons set forth above, Defendant's motion to transfer under 28 U.S.C. § 1404(a) will be granted. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge